EDMUND D. TAYLOR, Plaintiff in Error, *v.* CHURCHILL COFFING *et al.,* Defendants in Error.

### ERROR TO LASALLE.

The decision of the court between the same parties, as reported in the 18th volume of Illinois Reports, page 422, reconsidered and overruled; and the proper mode of keeping and stating partnership accounts discussed and explained.

THIS case was fully stated in the previous report of it, as found in the eighteenth volume of these Reports, page 422. The following opinions were pronounced, after a rehearing of the cause, upon a petition to that effect.

S. W. FULLER, and C. B. WAITE, for Plaintiff in Error.

T. L. DICKEY, and C. BECKWITH, for Defendants in Error.

BREESE, J. The leading facts of this case are briefly as follows: On the first of January, 1848, E. D. Taylor and Churchill Coffing, with one Isaac D. Harmon, entered into a mercantile business copartnership, at Peru, in this State, to be carried on under the name of Harmon & Co. On the 30th September, 1850, Harmon retired from the concern, and that part-

nership was dissolved, and Taylor and Coffing agreed to continue the business under the name of Taylor and Coffing; the capital stock which Taylor and Coffing contributed being transferred to the new books, and to represent the interest each had in the firm of Taylor and Coffing, viz: E. D. Taylor, five thousand dollars; Churchill Coffing, ten thousand dollars.

It is expressly declared by the articles of this copartnership, dated March 7, 1850, that " the business is to be continued for the purpose of paying off the debts of I. D. Harmon & Co., and reimbursing the capital aforesaid, as long as they shall mutually think best, and the profits and losses of the business shared mutually."

After being in business some fourteen months, on the 17th May, 1851, it was found that, instead of reimbursing the capital stock, or there being any prospect of it, Coffing was in debt to the firm, in the sum of eighteen thousand three hundred and fifty dollars, a sum largely over the capital stock of both the partners. The debts of I. D. Harmon & Co. not having been provided for.

To save this debt to the firm, it being largely indebted, Coffing executed an *absolute* deed of conveyance to Taylor and Coffing, of certain warehouses and stores in Peru. On the same day, Taylor and Coffing executed a deed of that date, in the nature of a defeasance to this absolute deed, which provides, after the recital of Coffing's indebtedness, that, " If the said Churchill Coffing shall well and truly pay, or cause to be paid, the said sum of $18,340 to the said Taylor and Coffing, or their representatives or assigns, within three years from the date of said deed of conveyance, and of these presents, or if the said Coffing shall pay any part of said indebtedness within the said term, then all the above described property, if all of the said indebtedness shall be paid, shall be reconveyed to the said Churchill Coffing, or so much of it shall be released and reconveyed proportioned to the amount of payment made by him of the indebtedness aforesaid ; and further, if the said Coffing can, at any time within the three years aforesaid, raise, by mortgaging the said premises, or by selling the same, or otherwise, sufficient money to pay said indebtedness, then the said Taylor and Coffing shall redeed to the said Churchill Coffing the premises above described, for the purpose of enabling the said Coffing to pay the said indebtedness ; and the said deed of conveyance to Taylor and Coffing, shall not prevent the said Coffing from selling or mortgaging the said premises, or any portion of them, for the purpose of paying said indebtedness."

The parties continued in business, after the date of this deed, until the 27th April, 1852, not quite one year, when the partnership was dissolved by an agreement of that date, as follows:

" *Whereas*, Col. E. D. Taylor, of Michigan City, in the State of Indiana, one of the partners of the firm of Taylor & Coffing, of Peru, La Salle county, and State of Illinois, has agreed to indorse upon an indenture given by Churchill Coffing, of Peru, aforesaid, to Taylor & Coffing, for eighteen thousand three hundred and forty dollars, the sum of five thousand dollars, as so much paid upon said indenture by said Coffing ; *and whereas*, the said E. D. Taylor has also agreed to assume and pay all debts, liabilities, notes, or drafts outstanding against the firm of Taylor & Coffing, and release the said Coffing entirely therefrom ; *and whereas*, the said E. D. Taylor, one of the proprietors of the Illinois River Bank of Taylor & Coffing, has agreed to pay to the said C. Coffing, for the said bank and for the Salisbury Plank Road Company, the sum of five hundred dollars per annum, to be paid to the said C. Coffing quarterly, for the space of      years, for his services as President of said Bank and of the Salisbury Plank Road Company :

" *Now, therefore, know all men by these [presents]*, that I, Churchill Coffing, of Peru, La Salle county, and State of Illinois, for and in consideration of the sum of five thousand dollars, indorsed upon said indenture as above recited, and also in consideration of the said Taylor's assuming and paying the debts and liabilities of the said Taylor & Coffing, and releasing the said Coffing from all liability or responsibility therefor ; and also, in consideration of the payment of five hundred dollars to the said Coffing, for his services as President of the Salisbury Plank Road Company and the Illinois River Bank of Taylor & Coffing as aforesaid, has [*have*] sold, transferred, assigned and set over, and by these presents do sell, transfer, assign and set over to the said E. D. Taylor, his heirs and assigns, all my right, title, and interest in and to all property, debts, accounts, notes, books, and papers belonging to the firm of Taylor & Coffing, (*excepting the indenture given by the said Coffing to Taylor & Coffing aforesaid, which is to stand and remain as it is, unaffected by this deed of sale*,) and also, all my right, title and interest of every kind and nature in or to the charter of the Illinois River Bank of Taylor & Coffing, and in or to the charter of the Salisbury Plank Road Company, and all my interest in the stock, notes, bills, papers, books, moneys, and all other property belonging or appertaining to said bank, or to said C. Coffing & Co., or to the said Salisbury Plank Road Company. And I, the said Coffing, do hereby promise and agree to use all honorable means to advance the interests of said institutions, and faithfully and truly perform such duties as shall devolve upon me by virtue of the office of President, etc., so long as I shall be required to act in that capacity, for the      term aforesaid.

" In witness whereof, I have hereunto set my hand and seal this 27th day of April, 1852.

CHURCHILL COFFING. [L. S.]

" Know all men by these presents, that I, E. D. Taylor, of Michigan City, Indiana, in consideration of the sale this day made by the said Churchill Coffing contained in the foregoing indenture, do hereby covenant and agree with the said Coffing, his heirs and assigns, to have indorsed upon C. Coffing's indenture for eighteen thousand three hundred and forty dollars now in the possession of Taylor & Coffing, the sum of five thousand dollars as so much paid upon said indenture by the said Coffing, and also, that I will assume and pay all debts, liabilities, notes, or drafts outstanding against the said firm of Taylor & Coffing, and release the said Coffing entirely therefrom, and further, as one of the proprietors of the Illinois River Bank of Taylor & Coffing, and of the Salisbury Plank Road Company. The sum of five hundred dollars per annum shall be paid to the said Coffing quarterly, for the space of      years, for his services as President of said Bank and Plank Road Company.

" In witness whereof, I have this 27th day of April, 1852, hereunto set my hand and seal.

E. D. TAYLOR. [L. S.]

Filed October 15th, 1852, at 1½ o'clock, P. M."

The debts of the concern were very large; this item being about one-half of what the firm owed. The assets, including this item, are not shown to have been sufficient to pay the debts.

It is not pretended that Taylor has not paid all the debts and liabilities of the firm, as well as the five hundred dollars per annum to Coffing, for his services as president of these companies.

These being the stipulations and contracts of the parties, the account should be stated thus :

C. COFFING, in account with TAYLOR & COFFING,  Dr.

To his debt secured by deed of May 17, 1851, payable in three years, $18,340
Cr.  By this amount indorsed on said deed by Taylor, - - - - - 5,000

$13,340

showing a balance at this time of thirteen thousand three hundred and forty dollars, due by Coffing, to Taylor and Coffing, to be paid in three years without interest; and if paid by Coffing in that time, the real estate to be re-conveyed to him.

" The purpose " for which these parties continued business, after the dissolution of the firm of Harmon & Co., that of reimbursing the capital, would seem to have been far from being accomplished, and therefore, a dissolution was determined on.

The terms of that dissolution are clearly set forth in the above agreement, and by it, Taylor, incontestably, became the absolute owner of all "the property, debts, accounts, notes, books and papers belonging to the firm of Taylor & Coffing," which terms, as is admitted in the opinion of my brother Walker, included the capital stock of Coffing. Taylor became the absolute and sole owner of all these, with the exception stated in the italicised paragraph, and this it is, which has occasioned the litigation in this case, but which, as I view it, should have occasioned none.

This absolute deed, "indenture," was "to stand and remain as it is, unaffected by this deed of sale." How did the indenture stand at that date? It stood controlled by a deed of defeasance, making it a mortgage, and it was so to remain, being unaffected by the deed of sale, Coffing having three years within which to pay the debt secured by it. All the rest of the assets of the concern passed immediately to Taylor by this deed. This, and the principal *assets*, so far as the privileges conceded to Coffing by the deed of dissolution, and they were important, were concerned, was not to be affected by the deed of sale. But was it never to be affected by it? Was Coffing never to pay this debt? If that was the understanding, it was quite easy to have inserted it in plain terms in the deed of dissolution. After the expiration of three years, the debt remaining unpaid, could not Taylor foreclose and sell? Suppose the indenture had been assigned by Taylor & Coffing to a stranger, could he not foreclose and sell, and in what respect does Taylor's condition differ, *he* being the assignee? Are his rights less?

Brother Walker and myself perfectly agree that Coffing's capital stock passed to Taylor under the terms of this deed of dissolution, and as, in my opinion, that capital stock existed only in the shape of this debt due by Coffing, secured by this indenture, that necessarily passed to Taylor, the only right remaining to Coffing being the right to pay the debt, or use the property for that purpose, as stipulated in the deed. Or it went to him as a debt due the firm of Taylor & Coffing. In either view, Taylor's right seems unquestionable.

Coffing certainly owed the debt—it was *assets* of the firm, and all the stipulations in the deed bind him to its payment. The most and only effect I can give this exception in the deed of dissolution of April 27, 1852, is as I have stated; all the other assets of the concern, except this indenture, passed immediately to Taylor—that stood and remained as it was, unaffected by the deed of sale. In other words, the indenture was an *ab solute deed* from Coffing; but there was a defeasance behind it, and lest it might be supposed that the deed would become ab-

solute on the dissolution, and Coffing deprived of the privileges secured by the defeasance, and the property pass to Taylor unconditionally, it was to be understood that it was still to remain as a mortgage, to be affected *as a mortgage*, in no degree by the agreement, and this, I think, would be the understanding of all mercantile business men. The stipulation in the deed of dissolution is not that Coffing shall never be required to pay the debt represented by the property described in the indenture, but that the indenture was to remain, as it was made to be, by the defeasance — a security merely, and as such, unaffected by the agreement. Why should not Coffing pay this debt? What exonerates him? Taylor has paid all the liabilities, and they were heavy. There is no stipulation in any of the agreements *releasing* him. This debt was important to aid in discharging the liabilities. The debt due was one thing, that passed to Taylor; the indenture was a different thing, as there was a defeasance connected with it, and it was extremely proper that it should not be affected by the agreement. It was to remain a mortgage, and the debt secured by it to be paid without interest, in three years. This seems to me the only reasonable interpretation of the exception in the agreement. Any other would do Taylor great injustice.

The argument is, that as this indenture was given to Taylor & Coffing as a firm, Coffing, being one of the firm, must be entitled to one-half of this debt. But this cannot be, if the capital stock of Coffing passed to Taylor, and this debt represented it. The facts show that Coffing has been credited by Taylor on this indenture five thousand dollars, one-half the amount he put in, and by my brother Walker's argument, Taylor has become entitled to the capital stock represented by this debt. Now, if Coffing is allowed to come in and share equally with Taylor in this balance of $13.340, due by himself to Taylor & Coffing, how can it be said that the whole capital stock went to Taylor, as it is admitted it did, and this debt which it represents did not? I cannot understand this. On no principle, I recognize, can Taylor be deprived of this debt. Coffing owed it, and as the debts due the firm went to Taylor, this went with it. Though due to Taylor & Coffing, in the first instance on the assignment, it became Taylor's, and would have passed to him instantly were it not for the exception in the deed of dissolution, which postponed it until after the expiration of three years. There can be no other construction put upon it by mercantile men, I think. Did not Coffing owe the debt? Does not that debt represent his capital stock? Is there anything of this stock remaining, but this debt? Did not the capital stock and all the debts due the firm pass to Taylor by the assignment? All this, or enough for my purposes, is ad-

mitted in the opinion of my brother Walker, and all the right, therefore, legal or equitable, reserved to Coffing, was, in my opinion, the privilege of paying this debt in three years, without interest.

Against this balance of $13,340, justly due from Coffing to Taylor, Taylor has received four thousand dollars in rents of the property, for which Coffing is fairly entitled to a credit, no proceedings having been instituted by Taylor to foreclose the mortgage, or to establish the first deed, by reason of Coffing's default as an absolute deed.

A decree should pass for Taylor here for nine thousand three hundred and forty dollars, with interest thereon from the 17th of May, 1854, until this time; but as my brother Walker will not concur with me in this opinion, nor the Chief Justice with either, I must yield my opinion, in order to get a final decision of the case, to the better judgment of my brother Walker, and accordingly consent that a decree vacating and reversing the first decree be entered, and a decree entered here in favor of Taylor, of three thousand five hundred and seventy-six dollars, and costs.

CATON, C. J.   I adhere to the decree formerly entered by the unanimous opinion of the court.

Separate Opinion by WALKER, J.

To determine correctly, the rights of the parties in this case, we must ascertain their intention, in executing the deed of sale by Coffing to Taylor, and the covenant from Taylor to him, of the same date.   If this court gave them their true construction, when this case was considered on a former occasion, the conclusion then arrived at is undoubtedly correct.   But if their intention was misapprehended, the account then stated between the parties was erroneous to a large amount.   Coffing, by that deed, sold to Taylor his interest, as a partner in the firm, by this language:   " Has sold, transferred, assigned and set over, and by these presents does sell, transfer, assign and set over to the said E. D. Taylor, his heirs and assigns, all my right, title and interest in and to all property, debts, accounts, notes, books and papers belonging to the firm of Taylor and Coffing (except the indenture given by Coffing to Taylor and Coffing aforesaid, which is to stand and remain as it is, unaffected by this deed of sale,)" and Taylor, by his covenant of the same date, bound himself to pay all the debts owing by the firm, and also to credit the indenture given by Coffing, as referred to in his deed, by the sum of five thousand dollars, the amount allowed him by Taylor for

his interest in the Illinois River Bank, and in the Salisbury Plank Road Company.

It was held in 18 Ill. R. 422, in giving to Coffing's deed a construction, that it neither passed to Taylor the capital advanced to the firm by Coffing, or his account with the firm. In that conclusion I am unable to concur.

This deed, by the language employed, undoubtedly passed to Taylor all of his interest, of every description, in the firm, except in the instrument denominated an indenture, which was, on its face, an absolute conveyance of certain real estate, to defeat which, Coffing held a defeasance from Taylor, which rendered it in effect a mortgage. That was the only interest in the firm, whether consisting of property, debts, choses in action, claims or equities, whether between the firm and other parties, or between the members of the firm, in which Coffing had an interest which was reserved. And the very fact that it was reserved, by express language, renders it evident, to my mind, that no other right or interest was intended to be reserved. He transferred his interest in the books of the firm, and if kept in this instance, according to commercial usage, there was opened in them a stock account in the name of each member of the firm, in which he was credited by the capital stock advanced by him, and charged with any portion of it which he may have afterwards withdrawn. And as it was not shown in evidence that such accounts were not opened, the presumption may be indulged that they were opened in accordance with this general commercial usage. If such accounts were opened in these books, they were accounts that every accountant would say must be taken into consideration in making up a balance sheet, on a final settlement of the firm affairs, between the partners. And on such a settlement, Coffing would have had the right to receive the excess of his capital over Taylor's, with interest upon one-half of that excess out of the firm effects, before Taylor received anything. Coffing would be a creditor of the firm, on a final settlement of its affairs by the partners, to that extent. He and Taylor, after he had received that amount, would be equal in capital, which would have to be paid out of the property and effects of the firm, and then each would be entitled to one-half of the profits, if any were realized. They were each creditors of the firm, and had an interest in the firm property, debts, accounts, notes, books and papers, to that extent. And when Coffing granted all of his interest in these effects of the firm, I am at a loss to perceive how this interest did not also pass. The language employed is sufficiently comprehensive for the purpose, and the stock is not reserved by the deed. I am, therefore, of the opinion, that he by this deed transferred to Taylor, all right

Taylor *v.* Coffing et al.

to receive from the firm, or from Taylor, any portion of the capital stock advanced by him. If it was not intended to pass, why was it not reserved in the deed, as was the mortgage ?

This construction is fully sanctioned, I think, by commercial usage. It is believed the commercial world understands, that when a partner sells his interest in a copartnership without reservation, to a person not a member of the firm, that the capital advanced by him passes to the purchaser.

If a bequest were made by a testator, of all his interest in a copartnership, of which he was a member, and the same language were employed, as is in the granting part of this deed, it is believed that no one would contend that the executor, as against the legatee, would have a right to withhold the capital stock advanced by the testator. Or, if the interest of a partner in a firm were sold on execution, or under a decree, that the purchaser would not, by his purchase, acquire a right to the capital stock advanced by the partner. Then, if such an interest does pass by a sale by a member of a firm, to a person not a partner in the firm, or by a bequest, or by a sale on execution or decree, no reason is perceived why the same rule should not apply on a sale by one partner in a firm to another.

It must have been intended by the parties that everything pertaining to the firm and its affairs, as between themselves, should be settled, except this mortgage debt due from Coffing to Taylor and Coffing. Taking these instruments executed at the time, in connection with all the circumstances, and it seems to me that there must have then been a full, complete and final settlement of all the affairs of the firm, except this debt reserved from its operation. If this had not been their intention, why was not such unsettled portion reserved, as was the mortgage ? If the stock accounts were not settled, or did not pass by the sale, why was it that these accounts were not then adjusted, and the excess that would have been found to be in Coffing's favor, not credited on the mortgage debt ? If all else was then settled but the stock accounts and this mortgage, there was not then enough remaining to refund the capital advanced by the partners. The mortgage debt was all the assets of the firm which then remained as joint property, and, after receiving the credit of five thousand dollars, it would have been inadequate to reimburse the capital of the partners. And it seems to me that they would then have settled these accounts, and after allowing Coffing his excess of capital, with interest on one-half of that amount, to which he would have been first entitled as a credit on the mortgage, and whatever then remained, would have belonged to them equally. And Coffing would then have received a further credit of one-half of that remainder, and the

balance would have been due from Coffing to Taylor. Such an adjustment was so simple, that it would seem that business men would have certainly availed themselves of it, or have made some reservation of their stock in the sale, as they did in regard to the mortgage debt.

The construction, it seems to me, is not warranted, that anything else remained unadjusted. When the mortgage debt was reserved, by express language, from the operation of the sale, that express reservation excluded all other things from its operation. All else was settled, or conveyed to Taylor, but the mortgage debt, which remained as it then was, unaffected by the sale. How was it then situated? It was owing from Coffing to the firm, payable to the firm, and was the joint property of the firm. Everything besides being then settled and conveyed to Taylor, it remained unaffected by the sale, as it then was, a debt owing from Coffing to the firm, payable to the firm, and owned by them as firm property, just as it did before this transaction occurred. If it became the property of either party by that transaction, it did not remain unaffected by the sale, which the deed had expressly provided that it should. If it passed to Taylor by that sale, it thereby became individual, and not firm property, which would have certainly affected it. But, by this stipulation, it remained their joint property, precisely as if it had been a debt due from another person, and reserved by this sale, and all of the other affairs being settled, they held this debt in equal parts, and had it then been paid by Coffing, nothing would have remained but to divide the money equally between themselves, and close the entire concern.

If this conclusion be correct, this debt belonged to the firm, subject to division between them. After deducting the credit of $5,000, there remained the sum of $13,341, one-half of which was $6,670, the amount each was entitled to receive on its division. Taylor afterwards received, of rents arising from the mortgaged property, $4,000, which, when deducted from his half, left still coming to him of the debt, $2,670. Add to this last sum, the interest which has accrued since it became due, the sum of $906, and it will make the sum of $3,576, due from Coffing to Taylor on the 17th day of January, 1860, the date of stating this account, and for which last mentioned sum a decree will be rendered in Taylor's favor, in conformity with this opinion, and the former decree rendered by this court in this case reversed, and that complainant, Taylor, recover his costs.